**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.** **Case No. 4:17-cr-00275 KGB**

**RODNEY ADAM HURDSMAN** **DEFENDANT**

**ORDER**

Before the Court are several pending motions filed by defendant Rodney Adam Hurdsman *pro se*, including a Rule 41(g) motion that money seized by the Federal Bureau of Investigation ("FBI") be returned to Hurdsman or applied toward his restitution ("Rule 41(g) Motion") (Dkt. No. 176); a motion for status seeking information about his Rule 41(g) Motion (Dkt. No. 190); a motion for Order to unseal certain discovery and for the government to produce Hurdsman's jail phone calls to his state attorney (Dkt. No. 191); a motion for return of unlawfully recorded and obtained attorney-client telephone calls and for Court Order that the government and named detention facilities identify, preserve, and produce any and all such private communications (Dkt. No. 192); a sealed filing (Dkt. No. 197); a motion to reinstate lawsuit under F.R.C.P. (Dkt. No. 207); a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody (Dkt. No. 208); a motion, petition, and complaint to return or compensate Hurdsman for property unlawfully seized and not returned by the federal government and its agents pursuant to the Tucker Act and the Fifth Amendment Taking Clause and the Eighth Amendment Excessive Fines Clause of the U.S. Constitution (Dkt. No. 209); motion to clarify and amend their motion, petition, and complaint to return or compensate them for seized vehicle, property, and currency belonging to them and not returned (Dkt. No. 210); motion to appoint counsel (Dkt. No. 212); motion for hearing on Hurdsman's § 2255 motion (Dkt. No. 213); and a second motion for

an evidentiary hearing on his § 2255 motion based on substantial new evidence supporting his claim (Dkt. No. 214).

## I. Background

### A. Procedural Background As To Criminal Conviction

Hurdsman is serving a state sentence of 75 years of imprisonment pursuant to a judgment of conviction in Wise County, Texas (Dkt. No. 142, at 1). In addition, "[b]etween March 10, 2014, and September 25, 2014, a group of revolving co-conspirators that included Hurdsman. . . and others are alleged to have committed several bank robberies." (*Id.*). Hurdsman entered a guilty plea in this Court to aiding and abetting the robbery of the Malvern National Bank (*Id.*, at 2; *see also* Dkt. Nos. 136 (plea agreement to aiding and abetting bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and 2; 146 (amended plea agreement, clarifying charge was pursuant to 18 U.S.C. § 2113(a) and 2)).

On September 24, 2019, Hurdsman was sentenced to 71 months of imprisonment with special provisions set forth for when the sentence was to commence and how the sentence was to run given Hurdsman's Texas cases and convictions, with three years of supervised released to follow, for his plea in this Court (Dkt. No. 153-1, 3–5). Hurdsman also was ordered to pay restitution in the amount of $12,321.75 to the Malvern National Bank (*Id.*, at 8). Hurdsman was represented by counsel through his sentencing. On October 2, 2019, Hurdsman filed a *pro se* notice of appeal, stating that he intended to appeal "the *Additional Supervised Release Terms* of his Sentence as entered in the Judgment in this case. . . ." (Dkt. No. 162) (emphasis in original). On September 11, 2020, the Eighth Circuit Court of Appeals entered its Opinion and Judgment, affirming Hurdsman's sentence (Dkt. Nos. 183; 184). The Mandate issued on October 5, 2020 (Dkt. No. 185).

### B. Procedural Background As To 28 U.S.C. § 2255 Motion

On March 28, 2022, Hurdsman filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence ("First § 2255 Motion") (Dkt. No. 193). In that motion, Hurdsman claimed "prosecutorial violation and interference with defendant[']s[ ] Sixth Amendment right to counsel under the U.S. Constitution." (*Id.*, at 4). Specifically, he alleged that the Assistant United States Attorneys who prosecuted his case provided only "a small batch of his pretrial jail phone calls" and that he first determined, in May 2021, "with the assistance of outside sources, that some of the jail calls that he was provided were attorney-client privileged communications with attorneys who[ ] represented him in the pending criminal cases at that time." (*Id.*). He alleged he received only "a very small bank of the hundreds of jail calls he made during his 3-plus years of pretrial incarceration." (*Id.*).

In his First § 2255 Motion, Hurdsman concedes that he received two "digital computer storage discs" with jail calls on them but "was unable to listen to the content as he was immediately returned to the State of Texas," where Texas jail officials confiscated the digital storage devices as contraband (*Id.*, at 11). Hurdsman admits "the discs were taken from [his] possession when he arrived at a T[exas ]D[epartment of ]C[riminal ]J[ustice] facility in November of 2018, and he had to make arrangements for family members to take possession of them." (*Id.*). Hurdsman contends that he "was not able to know the content until May 2021." (*Id.*).

On August 2, 2022, the Court ordered the government to respond to Hurdsman's First § 2255 Motion (Dkt. No. 199). The government sought additional time to respond, which the Court granted (Dkt. Nos. 201; 202). However, before the government responded, Hurdsman filed on August 16, 2022, a motion to dismiss his First § 2255 Motion, which this Court granted on August

25, 2022 (Dkt. Nos. 204; 205). Hurdsman's *pro se* motion lists the proper Court and case number, including the correct date and docket number of the filing when referencing his First § 2255 Motion (Dkt. No. 204).

On January 30, 2023, Hurdsman filed a motion to reinstate lawsuit under F.R.C.P. (Dkt. No. 207). Essentially, Hurdsman asks the Court "to reinstate the above said case, which was dismissed without prejudice, after [he] motioned the Court to do so in error, believing that [he] was doing so in another federal civil case in the Western District of Texas." (*Id.*).

Then, on April 3, 2023, Hurdsman filed *pro se* a second motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody ("Second § 2255 Motion") (Dkt. No. 208). In his Second § 2255 Motion, Hurdsman again claims "violation of the Sixth Amendment right to counsel / prosecutorial misconduct pursuant to the U.S. Constitution" (*Id.*, at 3). Specifically, Hurdsman claims that the Assistant United States Attorneys who prosecuted him in this case:

> intentionally, unjustifiably and unlawfully obtained, possessed and were privy to private, privileged and confidential jail phone calls and conversations between me and my criminal defense attorneys prior to my conviction and sentencing in this case, and did so through their law enforcement agents without my, my attorneys and my investigators knowledge or consent, and without a lawful warrant to have done so.

(*Id.*, at 6).

Hurdsman admits that, after he entered a plea and was sentenced in this case, did he request in September 2019 that his defense attorney attempt to determine if the Assistant United States Attorneys had in their possession any of his jail phone calls that had not been turned over in discovery prior to his conviction and sentencing in this case (*Id.*). He claims that his lawyer received a disc and that his lawyer provided the disc to Hurdsman (*Id.*). According to Hurdsman, the lawyer admitted that the lawyer had not listened to the calls (*Id.*). Hurdsman admits that

Hurdsman was transferred to Texas, after his sentencing in this Court; had the discs but could not keep them in Texas state prison; and sent the discs to his family (*Id.*). Hurdsman claims that only later did he learn what was on the calls (*Id.*). He also describes filing two separate civil lawsuits regarding "the unlawfully recording, storage, and dissemination of [his] attorney-client phone calls" (*Id.*). Hurdsman contends that these "attorney calls gave the government an unlawful tactical advantage and prejudiced [his] defense in this case." (*Id.*). He requests resentencing (*Id.*).

### C. Request For Return Of Seized Property

Hurdsman filed his Rule 41(g) Motion on June 23, 2020 (Dkt. No. 176), and the government responded in opposition to Hurdsman's motion on July 28, 2020 (Dkt. No. 180). Hurdsman filed a reply (Dkt. No. 182). The Court entered an Order directing the government to submit an affidavit or other record evidence regarding Hurdsman's Rule 41(g) Motion (Dkt. No. 186), holding under advisement Hurdsman's Rule 41(g) Motion. The Court specifically directed "the government to submit an affidavit or other record evidence supporting its contention that the funds at issue are no longer in the government's possession or control, so that the Court may evaluate further Mr. Hurdsman's Rule 41(g) claim." (Dkt. No. 186, at 3).

The government filed an affidavit of Special Agent Michael G. Thompson (Dkt. No. 188). Thompson was the case agent on the bank robbery of the Malvern National Bank (*Id.*). Thompson avers that a multi-agency arrest team, including FBI members from the Shreveport Office, arrested Hurdsman. Money seized from Hurdsman's person and vehicle, and money recovered from the casino at which Hurdsman was arrested and where he purportedly was spending his ill-gotten gains, was "eventually transferred to the Round Rock, Texas, Police Department." (*Id.*). First, Thompson confirms that the "[e]xemplars from all three sets of money were submitted to an FBI laboratory to analysis, which confirmed that all three sets of money contained dye that matched

dye packs that exploded on the funds after the final bank robbery in Round Rock, Texas." (*Id.*). Second, Thompson confirms that, in response to Hurdsman's motion, Thompson contacted by email Texas law enforcement and determined that the funds seized were in possession of the Round Rock, Texas, Police Department, not the FBI (*Id.*).

Hurdsman filed a response to Thompson's affidavit, arguing that Thompson's affidavit omits critical facts and information necessary for this Court to rule on Hurdsman's pending motion (Dkt. No. 189). Since filing that response, Hurdsman has filed a motion for status seeking information about his Rule 41(g) Motion (Dkt. No. 190).

After that, Hurdsman filed a motion, petition, and complaint to return or compensate Hurdsman for property unlawfully seized and not returned by the federal government and its agents pursuant to the Tucker Act and the Fifth Amendment Taking Clause and the Eighth Amendment Excessive Fines Clause of the U.S. Constitution (Dkt. No. 209). Stephanie Michelle Hurdsman also seeks to bring these claims (*Id.*). In that motion, Hurdsman seeks the return of a vehicle, property and currency, or the compensation thereof in monetary value that was seized by federal agents without a warrant in this case and not returned to Hurdsman (*Id.*, at 1). Hurdsman claims this Court has jurisdiction over his request. However, even he cites to other proceedings that likely involve these matters, including but not limited to Case No. 15-cv-01724 from the United States District Court in the Western District of Louisiana, Shreveport (*Id.*, at 2). Hurdsman purports to describe the efforts family members have taken on his behalf to account for or return this property (*Id.*, at 2–4). He cites authority that he asserts supports his claims (*Id.*, at 4).

Hurdsman then filed a motion to clarify and amend the motion, petition, and complaint to return or compensate them for seized vehicle, property, and currency belonging to them and not returned (Dkt. No. 210). Stephanie Michelle Hurdsman joined this motion, as well (*Id.*).

Hurdsman purports to "withdraw their claims under the Tucker Act, and for compensation the amount of $25,000 concerning their vehicle, property and currency" and, instead, "bring that claim pursuant to the Little Tucker Act, 28 U.S.C. § 1346, and for compensation for damages in the amount of $10,000." (*Id.*).

## II. Analysis

### A. Filings Regarding § 2255 Motion

#### 1. The § 2255 Motions Are Untimely

The time in which to file a § 2255 motion for habeas corpus typically is one year from the latest of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1).[1] In the alternative, the one-year period of limitation shall apply to a motion and run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," if that date is later. 28 U.S.C. § 2255(f)(1).

Here, Hurdsman filed his First § 2255 Motion on March 28, 2022, well after one year from the date his judgment of conviction became final (Dkt. Nos. 185 (mandate of the criminal appeal);

[1] 28 U.S.C. § 2255(f) provides that "[a] 1–year period of limitation shall apply to a motion under this section." That limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

193 (First § 2255 Motion)). When Hurdsman filed, he knew his First § 2255 Motion was late, as evidenced by this language he included:

> The 8th Circuit Court of Appeals issued the mandate in this case on October 5, 2020, and normally the statute of limitations would expire 1-year from that date on October 6, 2021. However, the Defendant in this case invokes the doctrine of equitable estoppel or tolling for the following reasons: The Defendant after due diligence only became aware of the predicate facts that support the ground he has brought in his motion in May of 2021.

(Dkt. No. 193, at 11).

Further, before the Court could address Hurdsman's First § 2255 Motion or address whether that motion was timely filed, Hurdsman voluntarily moved to dismiss it (Dkt. No. 204), and the Court granted his motion and dismissed his First § 2255 Motion (Dkt. No. 205).

Five months later, Hurdsman filed a request to reinstate his lawsuit (Dkt. No. 207). From the face of that request, it is not readily apparent what Hurdsman seeks to reinstate (*Id.*). Further, from the initial motion to dismiss prepared and filed by Hurdsman *pro se*, it does not appear that Hurdsman was confused as to what Court or what case he was seeking to have dismissed (Dkt. No. 204). Then, before obtaining a ruling on the request to reinstate his lawsuit, Hurdsman filed his Second § 2255 Motion (Dkt. No. 208).

Hurdsman's First § 2255 Motion was untimely filed. Hurdsman voluntarily moved to dismiss that First § 2255 Motion, and the Court denies Hurdsman's request to reinstate that lawsuit (Dkt. No. 207). Hurdsman has not shown good cause shown for reinstating his First § 2255 Motion, and that request is moot, given that Hurdsman filed a Second § 2255 Motion.

Hurdsman's Second § 2255 Motion also is untimely filed. Further, for the following reasons, the Court determines that Hurdsman is not entitled to equitable estoppel or tolling of the limitations period for filing a § 2255 motion.

**2. Not Entitled To Equitable Tolling**

Equitable tolling is only appropriate in instances where extraordinary circumstances beyond a petitioner's control prevent timely filing. *United States v. Martin,* 408 F.3d 1089, 1093 (8th Cir. 2005). The petitioner must also demonstrate that he acted with due diligence in pursuing his petition. *See id.* at 1095.

The Eighth Circuit Court of Appeals has previously determined that equitable tolling was not proper when an unrepresented prisoner claimed lack of legal resources. *See Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000). The Eighth Circuit also has determined that an attorney's negligence or mistake is not generally an extraordinary circumstance; however "serious attorney misconduct, as opposed to mere negligence, 'may warrant equitable tolling.'" *Martin,* 408 F.3d at 1093 (quoting *Beery v. Ault,* 312 F.3d 948, 952 (8th Cir. 2002)).

For example, the Supreme Court remanded for a lower court to make an extraordinary-circumstances determination where the attorney "failed to file [the client's] federal petition on time despite [the client's] many letters that repeatedly emphasized the importance of his doing so," "apparently did not do the research necessary to find out the proper filing date," "failed to inform [the client] in a timely manner about the crucial fact that the Florida Supreme Court had decided his case," and "failed to communicate with his client over a period of years." *Holland v. Florida,* 560 U.S. 631, 652 (2010).

Comparatively, the Eighth Circuit has found extraordinary circumstances in a situation where the movant's attorney "consistently lied to [the movant] and his wife about the filing deadline; repeatedly lied to [the movant] and his wife about the status of [the movant's] case; refused to communicate with [the movant] or his family; neglected to file any documents, belated

or not, on [the movant's] behalf; and failed to return any of [the movant's] paperwork to him despite repeated requests and then demands." *Martin,* 408 F.3d at 1095.

In *Muhammad v. United States*, 735 F.3d 812, 815 (8th Cir. 2013), the Eighth Circuit determined that Muhammad claimed that his attorney Hunt initially stated she would file the § 2255 motion on his behalf and then quit communicating with him. The Eighth Circuit observed that Muhammad did not claim that Hunt lied to him about the deadlines for filing the motion, repeatedly told him that she would file the § 2255 motion, failed to communicate critical information about his case, or withheld paperwork from him that he would need to prepare his § 2255 motion. *Id.* The Eighth Circuit explained: "We do not condone attorneys failing to respond to letters or phone calls; however, in this case, Hunt's actions do not constitute an 'extraordinary circumstance' that prevented Muhammad from timely filing his § 2255 motion. Thus, equitable tolling should not apply." *Id.*

Hurdsman cannot demonstrate extraordinary circumstances on the record before the Court. Hurdsman admits that he received the disc with the jail calls shortly after his sentencing in this case on September 24, 2019 (Dkt. No. 145). Hurdsman admits that he had the disc when he was transferred to Texas, but Hurdsman did not listen to the disc at that time. Further, although someone on Hurdsman's behalf took custody of the disc for him, Hurdsman claims that 2021 was the first time he learned of the contents of the disc – well after the time for filing a § 2255 motion in this case. These facts, as admitted to by Hurdsman in his First § 2255 Motion, indicate the delay in filing was not due to an impediment caused by governmental action; the government turned over the disc to Hurdsman's lawyer shortly after the time of sentencing. Hurdsman does not indicate any misunderstanding or issues between Hurdsman and his lawyer regarding the filing of a § 2255 motion; Hurdsman filed a *pro se* First § 2255 Motion and Second § 2255 Motion.

Moreover, based on Hurdsman's admissions, the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence seems to be at or shortly after the time of Hurdsman's sentencing in this case on September 24, 2019, at the time the disc was turned over to Hurdsman.

Even if Hurdsman could meet the extraordinary circumstances requirement, and this Court determines he cannot on the record before it, Hurdsman fails to demonstrate the diligence required for equitable tolling. "The diligence required for equitable tolling purposes is 'reasonable diligence' not 'maximum feasible diligence.'" *Holland.*, 560 U.S. at 653 (internal citations and quotation marks omitted). Hurdsman offers no plausible explanation for why, when he turned the disc over to a family member or third party for safekeeping while incarcerated in Texas, no one listened to the disc on Hurdsman's behalf or arranged for Hurdsman to be provided with the contents of the disc is a format acceptable to the Texas facility. That delay occurred before Hurdsman filed his First § 2255 Motion.

Hurdsman then filed his First § 2255 Motion, moved to dismiss it voluntarily in this Court, and waited *five months* to move to reinstate that request for relief. On the record before the Court, Hurdsman has not demonstrated the diligence required for equitable tolling.

For all of these reasons, this Court concludes that Hurdsman is not entitled to the relief he seeks under § 2255 (Dkt. Nos. 208) because his requests for relief are time barred.

**3. Not Entitled To A Hearing**

Also pending is Hurdsman's motion for hearing on his § 2255 motion (Dkt. No. 213) and a second motion for an evidentiary hearing on his § 2255 motion based on substantial new evidence supporting his claim (Dkt. No. 214). Because this Court determines that Hurdsman is not entitled to relief under § 2255, the Court denies his motions for hearing. *See* 28 U.S.C. § 2255(b) (no

evidentiary hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").

### 4. Not Entitled To Discovery

Hurdsman also filed multiple motions essentially seeking discovery or preservation of evidence he believed related to the issues raised in his First § 2255 Motion and Second § 2255 Motion, including a motion for Order to unseal certain discovery and for the government to produce Hurdsman's jail phone calls to his state attorney (Dkt. No. 191); a motion for return of unlawfully recorded and obtained attorney-client telephone calls and for Court Order that the government and named detention facilities identify, preserve, and produce any and all such private communications (Dkt. No. 192); and a sealed filing that appears related to these same issues (Dkt. No. 197). Because this Court determines that Hurdsman is not entitled to relief under § 2255, the Court denies these motions, as well (Dkt. Nos. 191; 192; 197).

### B. Rule 41(g) Motion

Hurdsman, in his initial motion seeking relief for property that he claims was seized by law enforcement, cited Federal Rule of Criminal Procedure 41(g) in support of his motion (Dkt. No. 176), which states:

> (g) Motion to Return Property. A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g). Further, in that motion, Hurdsman only sought return of "approximately $4,500.00" or that, in the alternative, the funds be applied Hurdsman's restitution obligation in the Eastern District of Arkansas (Dkt. No. 176, at 1). The government initially argued, in part, that

Hurdsman's motion should be denied because the contested funds were seized not in this district but in Shreveport, Louisiana (Dkt. No. 180-1, at 2). However, the Eighth Circuit has held that the district court in which a defendant was tried has ancillary jurisdiction over a defendant's Rule 41(g) motion. *Thompson v. Covington*, 47 F.3d 974, 975 (8th Cir. 1995) (per curiam). This Court therefore determined that it had jurisdiction to adjudicate Mr. Hurdsman's Rule 41(g) motion.

To be entitled to relief under Rule 41(g), the movant must establish lawful entitlement to the property. *Jackson v. United States*, 526 F.3d 394, 396–97 (8th Cir. 2008) (citing *United States v. Clymore,* 245 F.3d 1195, 1201 (10th Cir. 2001) (per curiam)). This burden is often satisfied by showing that the property was seized from the movant's possession, as a person from whom property is seized is presumed to have a right to its return. *Jackson*, 526 F.3d at 396–97 (citing *Bailey v. United States,* 508 F.3d 736, 739 (5th Cir. 2007); *United States v. Kaczynski,* 416 F.3d 971, 974 (9th Cir. 2005); *United States v. Potes Ramirez,* 260 F.3d 1310, 1314 (11th Cir. 2001); *United States v. Chambers,* 192 F.3d 374, 377 (3rd Cir. 1999)). The government must then establish a legitimate reason to retain the property, which may be satisfied by showing a cognizable claim of ownership or right to possession adverse to the movant's. *See Kaczynski,* 416 F.3d at 974; *Chambers,* 192 F.3d at 377. A Rule 41(g) motion "is properly denied if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Vanhorn,* 296 F.3d 713, 719 (8th Cir. 2002) (internal quotation marks and citation omitted).

When evaluating Hurdsman's initial Rule 41(g) Motion, the Court determined that it was not clear based on the record before the Court at the time whether the relief which Hurdsman seeks would be proper under Rule 41(g). Rule 41(g) permits equitable relief for the return of property but not monetary relief to compensate for property that has been lost or transferred. *United States*

*v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001). Hurdsman did not cite any other basis for his request in his initial Rule 41(g) Motion (Dkt. No. 176).

Previously, this Court observed that the government contended that, after being seized in Louisiana, the funds at issue were sent to Round Rock, Texas, as evidence related to a bank robbery committed there and that laboratory analysis confirmed that the funds contained dye matching that of the dye packs which exploded on the funds after the Round Rock, Texas, bank robbery (Dkt. Nos. 186, at 2; 180-1, at 2). If the property at issue is not in the government's control, then the Court may not grant Hurdsman equitable or monetary relief under Rule 41(g). The Court directed the government to provide additional information to the Court to permit the Court to assess this request for relief (Dkt. No. 186).

In response, the government submitted the affidavit of FBI Special Agent Michael G. Thompson (Dkt. No. 188). Thompson was the case agent for the bank robbery of the Malvern National Bank for which Hurdsman was prosecuted in this Court (*Id.*). Thompson confirms that Hurdsman was arrested and items seized in Shreveport, Louisiana, including the money that is the subject of Hurdsman's current Rule 41(g) Motion (*Id.*). Thompson's affidavit establishes first that the "[e]xemplars from all three sets of money were submitted to an FBI laboratory to analysis, which confirmed that all three sets of money contained dye that matched dye packs that exploded on the funds after the final bank robbery in Round Rock, Texas." (*Id.*). Second, Thompson confirms that, in response to Hurdsman's motion, Thompson contacted by email Texas law enforcement and determined that the funds seized were in possession of the Round Rock, Texas, Police Department, not the FBI (*Id.*). In other words, these funds seized in Shreveport, Louisiana, are the ill-gotten gains from the Round Rock, Texas, bank robbery, not Hurdsman's properly acquired funds and not the ill-gotten gains from the bank robbery for which Hurdsman was

prosecuted in this Court – the bank robbery of the Malvern National Bank. Further, the funds seized in Shreveport, Louisiana, are not in the possession of the FBI but instead are in the possession of the Round Rock, Texas, Police Department. Hurdsman contests Thompson's sworn statements, but Hurdsman presents no competent evidence to this Court to contravene Thompson's sworn statements (Dkt. No. 189).

The Court determines that the government has presented sufficient evidence that negates Hurdsman's claim of ownership, given that the money contained dye that matched dye packs that exploded on funds after Hurdsman's final bank robbery in Round Rock, Texas. *See Kaczynski,* 416 F.3d at 974; *Chambers,* 192 F.3d at 377. The Court determines that Hurdsman fails to show that he is entitled to lawful possession of the seized property; the seized property is contraband that may be subject to forfeiture or may be needed for evidence. Moreover, the funds are in the possession of the Round Rock, Texas, Police Department, based on Thompson's sworn affidavit, not the FBI. As a result, this Court denies Hurdsman's Rule 41(g) Motion (Dkt. No. 176).

Hurdsman filed a motion for status regarding his initial Rule 41(g) Motion (Dkt. No. 190). The Court grants the motion and considers this Order denying Hurdsman's Rule 41(g) Motion the status update (Dkt. No. 190).

### C. Motion Under Other Statutes

Previously, this Court recognized that "[o]ther statutes authorize money damages against the United States, such as the Tucker Act, 28 U.S.C. § 1491, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and the Federal Tort Claims Act, 28 U.S.C. §§ 2671–81." *Hall*, 269 F.3d at 943. Accordingly, the Eighth Circuit has directed that, "when a district court conducting a Rule 41[(g)] proceeding learns that the government no longer possesses property that is the subject of the

motion to return, the court should grant the movant (particularly a movant proceeding *pro se* . . . ) an opportunity to assert an alternative claim for money damages." *Id.*

Now, Hurdsman, in his recent filings expands his request for relief from the Rule 41(g) Motion he initially filed. Hurdsman purports to seek relief on his own behalf and on behalf of Stephanie Michelle Hurdsman, who is not a party to this current proceeding but who has executed these filings seeking expanded relief (Dkt. Nos. 209; 210). Hurdsman and Stephanie Hurdsman request relief, under the Little Tucker Act, 28 U.S.C. § 1346, in the amount of $10,000, having withdrawn a prior request for $25,000 based on other laws cited (*Id.*). This request seems based on the funds Hurdsman alleges were seized, as well as a vehicle and other tangible property Hurdsman claims were seized (*Id.*).

In this proceeding, the Court denies without prejudice Hurdsman's motions seeking other relief (Dkt. Nos. 209; 210). If they wish to pursue these claims, Hurdsman and Stephanie Michelle Hurdsman may file a separate lawsuit against the United States asserting these claims. The Court takes no position on whether and, if so, where Hurdsman and Stephanie Michelle Hurdsman should file such an action. The Court understands the property at issue was seized in Shreveport, Louisiana, and that Hurdsman was prosecuted in Louisiana and Texas for crimes. The Court does not understand any of the property at issue to have been involved in the robbery of the Malvern National Bank to which Hurdsman pled guilty in this Court. *See Jackson v. United States*, 526 F.3d 394 (8th Cir. 2008) (addressing similar claims); *Jenkins v. United States*, Case No. 3:19-cv-188, 2021 WL 11560293 (D.N.D. June 22, 2021) (same).

**D. Request For Counsel**

Hurdsman filed a motion to appoint counsel, seeking counsel to assist with this § 2255 filings (Dkt. No. 212). Given that the Court dismisses as untimely Hurdsman's First § 2255

Motion and Second § 2255 Motion and finds no good cause to reinstate his First § 2255 Motion, the Court denies Hurdsman's motion to appoint counsel (Dkt. No. 212).

## III. Conclusion

For these reasons, the Court:

(1) denies Hurdsman's Rule 41(g) Motion (Dkt. No. 176);

(2) grants 41(g) Motion (Dkt. No. 190) and considers this Order the status report;

(3) denies Hurdsman's motion for Order to unseal certain discovery and for the government to produce Hurdsman's jail phone calls to his state attorney (Dkt. No. 191);

(4) denies Hurdsman's motion for return of unlawfully recorded and obtained attorney-client telephone calls and for Court Order that the government and named detention facilities identify, preserve, and produce any and all such private communications (Dkt. No. 192);

(5) denies Hurdsman's request in the sealed filing (Dkt. No. 197);

(6) denies or, in the alternative, denies as moot Hurdsman's motion to reinstate lawsuit under F.R.C.P. (Dkt. No. 207);

(7) denies as untimely Hurdsman's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence by a person in federal custody (Dkt. No. 208);

(8) denies without prejudice as moot Hurdsman's motion, petition, and complaint to return or compensate Hurdsman for property unlawfully seized and not returned by the federal government and its agents pursuant to the Tucker Act and the Fifth Amendment Taking Clause and the Eighth Amendment Excessive Fines Clause of the U.S. Constitution (Dkt. No. 209);

(9) denies without prejudice Hurdsman's motion to clarify and amend their motion, petition, and complaint to return or compensate them for seized vehicle, property, and currency belonging to them and not returned (Dkt. No. 210);

(10) denies Hurdsman's motion to appoint counsel (Dkt. No. 212);

(11) denies Hurdsman's motion for hearing on Hurdsman's § 2255 motion (Dkt. No. 213); and

(12) denies Hurdsman's second motion for an evidentiary hearing on his § 2255 motion based on substantial new evidence supporting his claim (Dkt. No. 214).

It is so ordered this 29th day of September, 2026.

Kristine G. Baker

Kristine G. Baker
Chief United States District Judge